## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANSELMO JESUS RIVERA | : | No. 10-632 |

## MEMORANDUM

PRATTER, J.                                                                 MARCH 24, 2022

Anselmo Rivera seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), claiming that he is at serious risk of harm from the COVID-19 virus and that he is experiencing mental health difficulties as a result of the increased stress of contracting COVID-19. Because Mr. Rivera has declined vaccination and early release would not reflect the serious nature of his crime, the Court denies his motion.

### BACKGROUND

### I.    Mr. Rivera's Motion for Compassionate Release

Mr. Rivera was arrested in October 2008 while members of the Lancaster County Drug Task Force executed a search warrant at his apartment. Mr. Rivera ran from the bathroom into the rear bedroom. In the bathroom, the Task Force discovered a bag of crack cocaine in the toilet and another on the floor. The officers also discovered another bag of crack cocaine in the front bedroom, along with a loaded firearm in the kitchen and another loaded firearm in the rear bedroom. After a jury trial, Mr. Rivera was convicted of four counts: (1) possession with intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. 841(b)(1)(B); (2) Possession with intent to distribute 28 grams or more of cocaine base within 1,000 feet of a school in violation of 21 U.S.C. § 860; (3) possession of a firearm in furtherance of a drug trafficking crime in

violation of 18 U.S.C. § 924(c); and (4) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Doc. No. 92.

The Court initially sentenced Mr. Rivera to 126 months of imprisonment for Counts Two and Four (Count One was a lesser included offense of Count Two) and a consecutive term of 60 months of imprisonment for Count Three. Doc. No. 92. This totaled 186 months of imprisonment. In addition, the Court sentenced Mr. Rivera to eight years of supervised release, a $1,500 fine, and a $300 special assessment. *Id.*

After Congress passed the Fair Sentencing Act of 2010, Mr. Rivera filed a habeas petition under 28 U.S.C. § 2255. In that proceeding, the Government agreed that Mr. Rivera's sentence should be reconsidered in light of the altered statutory penalties for defendants convicted of offenses involving crack cocaine. Mr. Rivera and the Government agreed that his sentence should be a total of 126 months. The Court agreed and imposed that sentence. Doc. No. 120. Mr. Rivera was serving his sentence at the Federal Correctional Institution McKean ("FCI McKean"). Doc. No. 127, at 3. He is now serving the remainder of his sentence under the custody of the Residential Reentry Management Office in Philadelphia. Mr. Rivera's anticipated release is May 15, 2022, according to the Bureau of Prisons.

In March 2021, Mr. Rivera moved for compassionate release. He explains that he is both near the end of his sentence and at risk of contracting COVID-19 because he has chosen not to receive any vaccine. Mr. Rivera is now 37 years old, and generally in good health. Doc. No. 127, at 3; Doc. No. 128, at 1. Mr. Rivera has knee pain, astigmatism, and a periapical abscess without sinus. Doc. No. 127, at 3. Mr. Rivera tested positive for COVID-19 on December 1, 2020. *Id.* at 4. As of February 25, 2021, he reported "generalized aches and pains" that he believed to be related to his COVID-19 infection. Doc. No. 128, at 1. As of April 25, 2021, when the Bureau of Prisons

produced his medical records, he had not reported any additional ailment. Doc. No. 127, at 4. In his reply, Mr. Rivera explains that he is suffering psychologically as well because he is "staring death right in its face" due to COVID-19. Doc. No. 130, at 2.

## II.    The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Mar. 18, 2022). The BOP limits outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates. When Mr. Rivera filed his motion, he was imprisoned at FCI McKean. FCI McKean currently houses 1,016 total inmates, 905 at the FCI and 111 inmates at the Camp. *FCI McKean*, Bureau of Prisons, https://www.bop.gov/locations/institutions/mck/ (last visited Mar. 18, 2022). As of March 2022, there had been 429 inmates that had recovered and 41 staff members who had recovered from COVID-19, no inmate had died of COVID-19, and there are no reported active cases of COVID-19 at FCI McKean. Tbl. *FCI McKean*, https://www.bop.gov/coronavirus/ (last visited Mar. 18, 2022). The Philadelphia Residential Reentry Management Office is managing the remainder of Mr. Rivera's incarceration.

## LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court. 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), in *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1) in *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n. 1.[1] Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

Mr. Rivera presents two reasons why the Court should grant him compassionate release: (1) the risk of COVID-19 at FCI McKean and (2) the nearing end (approximately five weeks hence) of his term of imprisonment. *See* Doc. Nos. 126, 130. As part of his motion, Mr. Rivera

---

[1] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

also notes the psychological toll that the COVID-19 pandemic has taken on him while in prison. Doc. No. 130, at 2. The Government opposes Mr. Rivera's motion.

## I.    Mr. Rivera Has Not Shown an "Extraordinary and Compelling" Reason for his Release

In order to demonstrate an "extraordinary and compelling" circumstance sufficient to qualify for compassionate release, a prisoner must show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii). Mr. Rivera, however, does not have any serious physical or medical condition that diminishes his ability to care for himself while in prison, even given the risk of COVID-19 reinfection.

First, Mr. Rivera does not have any serious medical condition placing him at special or heightened risk. Mr. Rivera's medical records show that he has knee pain, astigmatism, and periapical abscess without sinus.[2] The Centers for Disease Control has identified certain medical conditions that "may" make a person "more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 18, 2022). None of Mr. Rivera's present conditions are included on that list. In addition, Mr. Rivera does not argue that he is unable to care for himself or any of these conditions while in prison.[3] Thus, there is no reason for the Court to grant him compassionate release on this basis.

---

[2] This is a collection of pus at the root of a tooth. *See* Bernard J. Hennessy, DDS, Periapical Abscess, Merck Manual (Mar. 2021), https://www.merckmanuals.com/home/mouth-and-dental-disorders/tooth-disorders/periapical-abscess (last visited Mar. 18, 2022).

[3] Mr. Rivera also alleges that he is suffering from "periods of fatigue, shortness of breath, cough, chest pain, difficulty with thinking and concentration (sometimes referred to as 'brain fog'), depression, muscle pain, headache,

Second, on December 1, 2020, Mr. Rivera tested positive for COVID-19. He was monitored for ten days and remained asymptomatic throughout. Mr. Rivera's medical records show that he reported "general aches and pains" in February 2021 as a result of his COVID-19 infection but was not in any acute distress. Doc. No. 128, at 1. Mr. Rivera does not dispute this, and he also does not complain of any lingering effects in his correspondence with the Court. *See* Doc. Nos. 126, 130. While he tested positive on a rapid test and, thus, the result cannot be verified, it would not make a difference even if the result had been verified. *United States v. Wiltshire*, No. 11-cr-310, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("[T]he risk of reinfection after a prior positive test for COVID-19 is not a basis for compassionate release here. Presently, there is no scientific consensus on the risk of reinfection . . . Moreover, this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release.").

Third, Mr. Rivera was offered the Pfizer COVID vaccine in February 2021 but refused it. Doc. No. 128, at 27. He acknowledges this in his motion. Doc. No. 130, at 1. The Pfizer vaccine has been documented as highly effective against COVID-19 and identified variants, particularly with a booster shot. *See New CDC Studies: COVID-19 Boosters Remain Safe, Continue to Offer High Levels of Protection Against Severe Disease Over Time and During Omicron and Delta Waves*, Centers for Disease Control & Prevention (Feb. 11, 2022), https://www.cdc.gov/media/releases/2022/s0211-covid-19-boosters.html (last visited Mar. 18, 2022).

---

loss of smell, loss of taste, and blurred vision." Doc. No. 126, at 2. But none of these conditions appear in his medical records. Doc. No. 128.

The widespread availability of COVID-19 vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (citing *United States v. Burgard*, 857 F. App'x 254, 255 (7th Cir. 2021)). A prisoner simply cannot expect success with a "claim[ed] fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021); *see also United States v. Gonzalez Zambrano*, No. 18-cr-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."). "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

Fourth, Mr. Rivera's generalized fear of being re-infected with COVID-19 does not justify his release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that the "possibility" that the virus "may spread to" a person in a prison "cannot independently justify compassionate release").

In sum, because Mr. Rivera can "provide self-care within the environment of a correctional facility" by accepting a COVID-19 vaccine and because he has no other serious condition that puts him at serious risk if reinfected, he has not demonstrated an extraordinary or compelling circumstance to justify compassionate release. U.S.S.G. § 1B1.13 app. n. 1(A)(ii).

II.   **Mr. Rivera's Pending Release Date Does Not Provide Any Additional Reason to Grant Compassionate Release**

At the time of Mr. Rivera's motion in March 2021, his projected release date in May 2022 was just over a year away. Now his release date is less than two months away. Still, there is no "extraordinary and compelling" reason to release Mr. Rivera ahead of time. Mr. Rivera had a significant quantity of drugs in his house along with two loaded firearms. He also has a lengthy criminal record. Thus, the short amount of time remaining on his sentence is not a reason to grant his motion for compassionate release under these circumstances. *See, e.g.*, *United States v. Santiago*, No. 15-cr-280, 2020 WL 4015245, at *4 (E.D. Pa. July 15, 2020) (denying a motion for compassionate release where the defendant had one year remaining on 96-month sentence for drug offenses and the "defendant pleaded guilty in two separate actions before this Court for trafficking large quantities of drugs and illegally purchasing firearms").

Mr. Rivera points out that he has taken classes and read books to study real estate and trading during his time in prison. Doc. No. 130, at 2. The Court pleased for Mr. Rivera that he has used his time while incarcerated to better himself. This, however, does not provide any additional reason for the Court to release him early.

III.   **If Mr. Rivera Seeks Release from his Current Incarceration, He May File Another Motion for Compassionate Release**

Because this motion was filed almost a year ago, Mr. Rivera is now under the custody of the Residential Reentry Management office in Philadelphia. This is consistent with the law regulating the Bureau of Prisons. 18 U.S.C. § 3624(c)(1). There is no indication that Mr. Rivera's health concerns cannot be met by the Residential Reentry Management Office in Philadelphia. *See United States v. McDonald*, 09-cr-268, 2020 WL 4339429, at *5 (W.D. Pa. July 28, 2020). If Mr. Rivera seeks an alteration to his present incarceration status from the BOP and is denied, he has

the opportunity to file another motion for compassionate release. *See United States v. Jackson*, No. 93-cr-127, 2021 WL 1981320, at *4 (E.D. Pa. May 18, 2021).

CONCLUSION

For the foregoing reasons, the Court denies Mr. Rivera's motion for compassionate release. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE